JAMES DOYLE RUST, II,        )
                                        )
      Plaintiff/Appellant,      )
                                        )     Appeal No.
                                        )     01-A-01-9608-CH-00361
VS.                           )
                                        )     Rutherford Chancery
                                        )     No. 90DR-360
KAREN RUTH WAX RUST     )
GERBMAN,                 )
                                        )
      Defendant/Appellee.    )

**FILED**

**May 21, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE

APPEALED FROM THE CHANCERY COURT OF RUTHERFORD COUNTY
AT MURFREESBORO, TENNESSEE

THE HONORABLE ROBERT E. CORLEW, III, CHANCELLOR

RONALD L. STONE
6th Floor, 211 Printers Alley
Nashville, Tennessee 37201
     Attorney for Plaintiff/Appellant

BRAD W. HORNSBY (At trial)
JAY B. JACKSON (On appeal)
BULLOCK, FLY & McFARLIN
301 N. Spring Street
P. O. Box 398
Murfreesboro, Tennessee 37133-0398
     Attorney for Defendant/Appellee

AFFIRMED AND REMANDED

BEN H. CANTRELL, JUDGE

CONCUR:
LEWIS, J.
KOCH, J.

# O P I N I O N

Mr. Rust experienced a dramatic decline in income after his divorce, and petitioned for a reduction in his child support obligation. Following a lengthy course of litigation, the trial court reduced his obligation from $1,500 per month to $690 per month, and made the reduction retroactive to the date he petitioned for the modification.

Mr. Rust appealed, arguing that even this drastically reduced obligation was in excess of the presumptively correct amount to be awarded under the child support guidelines. His former wife's position on appeal was that it was error to order any reduction at all in child support, because the husband was willfully underemployed. Other issues on appeal involved the modification of the alimony award, the conduct of the wife's attorney, and a finding of contempt against the husband. We affirm the trial court in all respects.

## I. The Proceedings

In October of 1989, James Doyle Rust left the marital home that he had shared with Karen Rust. The couple had three young children, one of whom had been born in March of that same year. Mrs. Rust filed a petition for child support, and an agreed order was entered on July 10, 1990, which obligated Mr. Rust to pay $1500 per month in child support, to provide medical insurance for Mrs. Rust and the three children, and to pay all their uninsured medical and dental expenses.

Mr. Rust quickly fell behind on his child support obligation, and Mrs. Rust filed a petition for contempt and for judgment on the arrearages. The petition was still pending when the wife filed for divorce on October 16, 1990.

The parties subsequently entered into a Marital Dissolution Agreement, which was incorporated into the Final Decree of Divorce, filed March 19, 1991.

Divorce was granted to the wife on the ground of irreconcilable differences, and child support was set at $1,200 per month. The contempt case and divorce complaint were consolidated for the purpose of resolving all the pending issues in a single proceeding. A judgment against Mr. Rust for the child support arrearage in the amount of $7,192 was made a part of the decree, but execution on the judgment was stayed pending continuing payment on the obligation of $100 per month.

Further litigation followed, largely involving visitation and schooling for the children, the details of which it is unnecessary to recite here, except insofar as the court's order resolving those issues also modified Mr. Rust's support obligations once again.

The court ordered that child support again be increased to $1,500 per month. Because of a physical condition that made it difficult for Mrs. Rust to obtain medical insurance, Mr. Rust's insurance obligation as to her was replaced with a requirement that he pay her $150 per month for sixty months. The court later characterized this obligation as alimony. Mr. Rust was ordered to continue to provide medical insurance for his children.

Mrs. Rust subsequently remarried and took her new husband's last name. Henceforth in this opinion she will be referred to as Mrs. Gerbman. Mr. Rust also remarried. On September 3, 1993, Mr. Rust filed a pro se Petition to Modify Child Support. He claimed that his net income, which had been $4,100 per month at the time the prior support order was issued, had been reduced to $1,300 per month. Mrs. Gerbman answered, and filed a counter-petition for contempt, alleging Mr. Rust's failure to make monthly payments on the judgment, and on his child support. She claimed that he was understating his income, and that he was voluntarily underemployed.

Both parties subsequently filed numerous motions which raised additional issues and lengthened the course of the proceedings. After disposing of those issues, the court issued its ruling from the bench, and ordered Mrs. Gerbman's attorney to draft the order. Mr. Rust's attorney moved the court to amend the judgment, and the court responded to his objections before the amended order, from which this appeal was taken, was finally entered and approved by both counsel. The date was April 30, 1995, more than twenty months after Mr. Rust filed his pro se petition.

The court reduced Mr. Rust's child support to $690 per month, and made the reduction retroactive to September 3, 1993. The court also reduced the alimony payment (the money previously ordered to be paid in lieu of medical insurance) to $75 per month, retroactive to the same date, but extended the period during which it had to be paid to 120 months, so that the total payout ($9,000) remained unchanged.

Giving retroactive effect to these modifications reduced, but did not eliminate the arrearages Mr. Rust had accumulated, and the court's order included a new schedule for paying off those arrearages. The court also found Mr. Rust to be in contempt for having made only one child support payment during the first four months of 1995, and for failing to comply with the court's order to attend a seminar for divorcing parents. The judge ordered Mr. Rust to serve four days in the Rutherford County jail for his contempt.

## II. Child Support

The Tennessee legislature has provided specific direction to the courts charged with setting child support, by ordering that uniform child support guidelines

be established. See Tenn. Code Ann. § 36-5-101(e). The guidelines are promulgated by the Department of Human Services, and are based on a flat percentage of the obligor's net income. By law they create a rebuttable presumption that the amount of child support determined by an application of the guidelines is the correct amount to be awarded.

In applying the guidelines, the courts determine the income of the obligor parent for the year or years immediately preceding the filing of the petition for support, and find the corresponding amount of support in the guideline tables for that level of income and the number of children for whom support is being sought. Since the obligor is expected to pay future support out of future income, the rebuttable presumption of correctness obviously indicates a corollary presumption that prior earnings are a reliable predictor of future earnings.

It is not easy for the obligor to attack this corollary (nor should it be), since past income is easier to verify than future income is to predict, and since the order remains within the court's control and subject to modification if future events result in a significant change in the obligor's income, or his earning capacity.

In the present case, the proof showed that although Mr. Rust had been able to earn a very good living from the sale of automobiles, he frequently came into serious conflict with his employers. He worked for several different dealerships, but his income was highest when he was employed as finance manager at Superior Motors in Nashville. He earned $83,362 during eleven months in 1992, and made timely payments on his child support during that time. According to Mr. Rust, he had to quit that job because of stress related to his employer's order that he falsify certain entries on the books of the company, and because of a worsening alcohol problem related to that stress. Bill Proctor, comptroller of Superior Motors, denied any

wrongdoing by the company, but confirmed that Mr. Rust had a drinking problem that created concern and difficulties for the employer.

After leaving Superior Motors, Mr. Rust changed his line of work, and began selling insurance. He earned no income during the period while he was being trained. After he acquired his license, he managed to earn a net income of $13,986 in 1993. During that year, he fell behind on his child support payments again, but managed to avoid a threatened contempt by making two payments that amounted to $5,600, from the sale of the house that had belonged to his present wife.

Mr. Rust testified that when the books were closed on his 1994 transactions, he expected them to show that he had netted between $18,000 and $20,000. He had acquired some large institutional clients, and hoped that commissions from them would result in a 1995 net income between $40,000 and $50,000. However problems with his new marriage plunged him back into alcohol abuse, and he testified that he had been attending an outpatient alcohol rehabilitation program for the five or six weeks preceeding the hearing of April 29, 1995. The program involved at least three three-hour sessions each week. The effect of Mr. Rust's problems on his 1995 income was uncertain.

These facts were before the trial court when it ordered that child support be set at $690 per month. Such an award for the support of three children corresponds to an annual income of $25,200 for the obligor. Both parties disputed the correctness of the trial court's determination, but in light of the fluctuations and uncertainty surrounding Mr. Rust's income, we do not believe the trial court erred.

In his motion to alter or amend the court's judgment, Mr. Rust argued that the only correct way to calculate the retroactive portion of his obligation would have been to base it directly on his income for those years. He contended that such

a calculation would result in an obligation of only about $350 per month for 1993, and $550 per month for 1994. The court's response to the motion included a finding that Mr. Rust was voluntarily underemployed during those years, and that "he had the capability and capacity to earn more than he asserted."

Mrs. Gerbman seized on this finding to argue that Mr. Rust was not entitled to any reduction at all. She reasoned that the language of Rule 1240-2-4-.03(d) of the Child Support Guidelines, precluded any downward modification under the facts of this case:

> If an obligor is willfully and voluntarily unemployed or underemployed child support shall be calculated based on a determination of potential income, as evidenced by educational level and/or previous work experience.

Since the earlier order of child support was based on an income level that Mr. Rust admittedly achieved (and in fact subsequently exceeded), Mrs. Gerbman argued that as a matter of law, the trial court was not permitted to reduce his obligation.

We believe that both parties have taken too restrictive a view of the power of the trial court to fashion an equitable order within the constraints of the child support guidelines. A finding that an obligor is voluntarily underemployed enables the court to set a child support amount commensurate with his earning capacity rather than his actual earnings. Such a finding obligates the court to ascertain that capacity; it does not create an automatic determination that he remains capable of earning what he has earned in the past.

In the present case, there is evidence that even aside from his difficulties at Superior Motors, the automobile sales business has been a source of constant stress for Mr. Rust, and has worsened his alcohol problem. Hopefully, the insurance business will offer him a more stable working environment, and a reliable income that

will be of benefit to himself and his three young children. In light of the facts in the record, we cannot say that the trial court erred in finding that at this point in his new career, Mr. Rust's potential income could only sustain a child support obligation of $690 per month.

### III. Alimony

A second issue on appeal involves the alimony payments that Mr. Rust was ordered to make in lieu of medical insurance. The trial court found that the payments were in the nature of rehabilitative alimony, and that the court accordingly retained jurisdiction to modify it. As we discussed above, the court chose only to modify the payment schedule, and it left the size of the total obligation unchanged. Once again, both parties objected to the trial court's action on grounds that are diametrically opposed to each other.

Mr. Rust argued that the payments should have been terminated because of the rebuttable presumption stated in Tenn. Code Ann. § 36-5-101(a)(3), which reads as follows:

> (3) In all cases where a person is receiving alimony in futuro and the alimony recipient lives with a third person, a rebuttable presumption is thereby raised that:
>
> (A) The third person is contributing to the support of the alimony recipient and the alimony recipient therefore does not need the amount of support previously awarded, and the court therefore should suspend all or part of the alimony obligation of the former spouse; or
>
> (B) The third person is receiving support from the alimony recipient and therefore does not need the amount of alimony previously awarded and the court therefore should suspend all or part of the alimony obligation of the former spouse.

Mrs. Gerbman argues that when the trial court modified the insurance obligation to make it a fixed number of payments of a fixed size, without stating any

conditions or limitations on the award, the award was converted into alimony in solido, which the court no longer had any power to modify. Thus, she impliedly argues, the court was in error in reducing the monthly payments, and extending the length of the payment obligation.

The advent of rehabilitative alimony as a distinct category of spousal support has added complexity to the problem of correctly classifying an alimony award. Whereas alimony in solido and alimony in futuro can usually be distinguished without difficulty, rehabilitative alimony has some of the characteristics of both. It has a calculable total value like alimony in solido, but it is modifiable like alimony in futuro.

In the present case, the trial court modified an insurance obligation of indefinite duration (which, if it was alimony, was alimony in futuro) to an obligation of limited duration and fixed total value (which could theoretically be considered either rehabilitative alimony or alimony in solido). Responding to arguments from both sides, the chancellor stressed the purpose of the original award and the circumstances that made its initial modification necessary. Based on these considerations, he concluded that the modification created the kind of temporary support that remained within the jurisdiction of the courts to adjust as circumstances required.

We do not believe the chancellor erred in this determination, but we do not adopt the appellant's argument that the rebuttable presumption found in Tenn. Code Ann. § 36-5-10(a)(3) thereby applies to this case. We note that the terms of the statute refer specifically to alimony in futuro, not to rehabilitative alimony, and that the two forms of modifiable alimony are based on opposite findings as to the possibility of the obligee spouse becoming capable of providing his or her own support. Of course even without the presumption, Mr. Rust was not prevented from asserting that Mrs. Gerbman's remarriage eliminated her need for further spousal support. But he did not make that argument, nor is there any evidence in the record to support it.

## IV. Contempt

Mr. Rust argues that the trial court erred in finding him in willful contempt and sentencing him to four days in jail, because inability to pay is a defense to contempt. He claims that he was not capable of complying with the trial court's order during the four month period when he failed to pay his child support. He attributed this alleged incapacity to two problems: lack of income during the relevant period, and impairment of judgment due to a deteriorating domestic situation that plunged him into alcohol abuse.

However by his own admission Mr. Rust had some income every month during the relevant period, and we do not believe that his personal problems, grave though they may have been, excused him from the duty to support his children by his former marriage. As for the argument that his alcoholism somehow made his non-compliance with the court's orders involuntary, it does not appear to us to be based on sound reasoning or to be supported by any precedent or other authority that we are bound to respect.

## V. Attorney Disqualification

In the course of the prolonged struggle between the parties, Brad Hornsby, the wife's attorney filed a motion to terminate Mr. Rust's visitation privileges. The ground was that "recently discovered evidence" of felony warrants against Mr. Rust in Florida and South Carolina indicated that Mr. Rust "poses a risk of flight with the parties' children."

In response, Mr. Rust's attorney filed a motion to disqualify Mr. Hornsby, arguing that he was guilty of blatant misrepresentation to the court. Mr. Rust claimed that as a family friend and advisor on financial and legal matters, Mr. Hornsby had

long been aware of the disputes Mr. Rust had with former employers in those states, including their threats to swear out criminal warrants against him, and that he had specific knowledge as to the Florida warrant at least thirty-one months before he presented it to the court as "newly discovered evidence."

Mr. Rust further claimed that Mr. Hornsby had threatened him with criminal prosecution to get him to sign the marital dissolution agreement, and that Mr. Hornsby's prior relationship with the parties gave him knowledge of confidential information about Mr. Rust that should have precluded his subsequent representation of Mrs. Gerbman.

The trial court considered Mr. Rust's allegations and dismissed the motion to compel Mr. Hornsby to withdraw. The court found that Mr. Hornsby had not established an attorney-client relationship with either of the parties prior to the beginning of the divorce proceedings, and that he had therefore not violated DR 4-101 of the rules of the Code of Professional Responsibility in regard to preserving the confidences and secrets of a client. The court also found that Mr. Hornsby had not violated DR 7-105, which prohibits using the threat of criminal prosecution to gain advantage in a civil matter. The court did not directly address the question of Mr. Hornsby's alleged misrepresentation, but presumably found that Mr. Rust did not meet his burden of proof on that issue, or that the allegation, if proven, was not sufficiently grave to warrant disqualification.

We believe that it rests within the sound discretion of the trial court to determine whether an an attorney should be disqualified from appearing before it in a particular case. That discretion is rooted in the court's general powers, found in Tenn. Code Ann. § 16-1-102(4), to "[c]ontrol, in furtherance of justice, the conduct of its officers, and all other persons connected with a judicial proceeding before it, in every matter pertaining to the proceeding". The court's decision should not be

reversed except for abuse of that discretion. We do not find that the chancellor abused his discretion, and we accordingly affirm his decision.

**VI.**

At the conclusion of the opinion which preceded his final order, the chancellor wrote, "[i]t certainly is the hope of the Court that with the conclusion of these proceedings, the bitter disputes and ill-feelings which the parties have experienced toward each other will cease. Certainly the lives of the minor children will be enriched by such cessation." This court heartily concurs. The order of the trial court is affirmed. Remand this cause to the Chancery Court of Rutherford County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, JUDGE

CONCUR:


_____
SAMUEL L. LEWIS, JUDGE



_____
WILLIAM C. KOCH, JR., JUDGE